UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| LOUGENE THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:19-cv-00376-JPH-MJD |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DIRECTING ENTRY OF FINAL JUDGMENT**

Lougene Thomas suffered ongoing back pain while he was incarcerated at the Federal
Correctional Institution at Terre Haute in 2018 and 2019. He alleges that the medical professionals
responsible for his care were negligent, and he seeks damages under the Federal Tort Claims Act.

The United States moves for summary judgment. Because no reasonable jury could find
that Mr. Thomas's medical treatment fell below the standard of care, the motion for summary
judgment, dkt. [33], is **granted**.

**I. Summary Judgment Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because
there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment
as a matter of law. See Fed. R. Civ. P. 56(a). Whether a party asserts that a fact is undisputed or
genuinely disputed, the party must support the asserted fact by citing to particular parts of the
record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to
properly support a fact in opposition to a movant's factual assertion can result in the movant's fact

being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941–42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page*, 906 F.3d 606, 609–10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and is not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 572–73 (7th Cir. 2017). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson*, 477 U.S. at 255.

The plaintiff failed to respond to the summary judgment motion. Accordingly, facts alleged in the motion are deemed admitted so long as support for them exists in the record. *See* S.D. Ind.

Local Rule 56-1 ("A party opposing a summary judgment motion must . . . file and serve a response brief and any evidence . . . that the party relies on to oppose the motion. The response must . . . identif[y] the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment."); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission"); *Brasic v. Heinemanns, Inc.*, 121 F.3d 281, 285-286 (7th Cir. 1997) (affirming grant of summary judgment where the nonmovant failed to properly offer evidence disputing the movant's version of the facts). This does not alter the summary judgment standard, but it does "[r]educe[] the pool" from which facts and inferences may be drawn. *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997). Thus, "[e]ven where a non-movant fails to respond to a motion for summary judgment, the movant 'still ha[s] to show that summary judgment [i]s proper given the undisputed facts.'" *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (quoting *Yancick v. Hanna Steel Corp*., 653 F.3d 532, 543 (7th Cir. 2011)).

## II. Facts

Although Mr. Thomas initially injured his back in 2011, this action concerns the treatment he received for back pain at the Federal Correctional Institution (FCI) at Terre Haute in 2018 and 2019. The record includes Mr. Thomas's medical records and deposition testimony as well as opinions from two experts.

### A.    Initial Back Injury

Mr. Thomas injured his lower back while lifting weights at a different prison in 2011. Dkt. 33-2 at 2 (medical record from March 3, 2011; "Inmate stressed back while exercising with sandbags.").  He took ibuprofen temporarily to manage his pain. Dkts. 33-3, 33-4.

In 2013, an MRI showed three emerging issues in Mr. Thomas's lower back. First, he was experiencing "disk desiccation," or degeneration of the discs in the moving sections of his spine. Dkt. 33-5; *see* UCLA Health, *Degenerative Disc Disease*, https://www.uclahealth.org/neurosurgery/degenerative-disc-disease (last visited Sept. 8, 2021).[1] Second, he was experiencing minor "facet arthrosis," meaning some joints along his spine were beginning to rub against other spinal bones or joints because the cartilage separating them was damaged or degenerated. Dkt. 33-5; *see* WebMD, *Facet Arthrosis: What Is It and What Causes It?*, https://www.webmd.com/arthritis/what-is-facet-arthrosis (last visited Sept. 8, 2021). Finally, some of Mr. Thomas's spinal discs were protruding and contacting nearby nerve roots. Dkt. 33-5.

## B.     Arrival at FCI-Terre Haute

Mr. Thomas was transferred to FCI-Terre Haute in October 2018 and remained there until August 2019. Dkt. 33-1 at 36:1–3. The record does not indicate whether Mr. Thomas experienced any back problems between his 2013 MRI and his arrival at FCI-Terre Haute. The health screening Mr. Thomas completed when he arrived at FCI-Terre Haute does not document any back pain or injury. *See* dkt. 33-8 at 3 ("Current Painful Condition: Denied").

Dr. Elizabeth Trueblood examined Mr. Thomas a week later. Dkt. 33-9. Her treatment notes refer to nerve pain but state that Mr. Thomas did not need to be treated for nerve pain as a chronic condition. *Id.* Those notes add that over-the-counter pain medication would be available through the commissary if Mr. Thomas developed back pain. *Id.*

---

[1] In summary judgment rulings, Courts may draw definitions and similar "medical information . . . from the websites of highly reputable medical centers," even if that information has not been presented by the parties. *Rowe v. Gibson*, 798 F.3d 622, 628 (7th Cir. 2015).

C.     **Back Pain Onset and Treatment**

On November 26, 2018—a month after he arrived at FCI-Terre Haute—Mr. Thomas went to sick call and complained of severe, aching pain in his lower back. Dkt. 33-10. He does not identify a single incident that brought on this back pain; rather, he thinks some exercises caused "friction" that produced back pain. *See* dkt. 33-1 at 24:19–25:1. By December 1, his back pain was "sharp." Dkt. 33-12 at 1. Mr. Thomas received a Toradol injection and instructions to return to sick call if he did not improve. *Id.* at 2.

Physician's Assistant Genevieve Muscatell examined Mr. Thomas on December 18. Dkt. 33-13. She noted continued back pain and decreased range of motion in his spine. *Id.* at 2. PA Muscatell ordered x-rays and prescribed ibuprofen and a steroidal anti-inflammatory medication. *Id.* at 3.

X-rays taken the next day revealed that the spaces between Mr. Thomas's spinal discs were narrowing. Dkt. 33-14 at 1. The radiologist who reviewed the x-rays stated that "a CT or MRI exam can provide further detail" if his pain persisted. *Id.*

Mr. Thomas did not return to the doctor for three months. On March 13, 2019, Dr. L. Rogatnick examined Mr. Thomas and documented that his back pain was now traveling down his buttocks and legs. Dkt. 33-16 at 1. However, Dr. Rogatnick also recorded that Mr. Thomas obtained temporary relief from his Toradol injection and steroid regimen. *Id.* Dr. Rogatnick prescribed another steroid treatment and ibuprofen and requested that an MRI be completed by June 13. *Id.* at 3. According to Dr. Rogatnick, Mr. Thomas needed a "new" MRI, which she characterized as "routine" rather than urgent. *Id.*

Mr. Thomas returned to sick call on May 31, 2019. Dkt. 33-18. He had not received the MRI that Dr. Rogatnick had ordered, but he also had not been back for more treatment since his

March 13 visit. Treatment notes from May 31 state that Mr. Thomas reported continued lower back pain but "nothing new." *Id.*

Nurse Practitioner Volstorf examined Mr. Thomas on July 9, 2019. Dkt. 33-19. According to NP Volstorf's notes, Mr. Thomas again reported that his back pain was traveling down his legs and that his recent medication regimen provided "several weeks" of relief. *Id.* at 1. NP Volstorf prescribed another steroid treatment plus meloxicam, a nonsteroidal anti-inflammatory drug used to treat arthritis symptoms. *Id.* at 3; *see* Mayo Clinic, *Meloxicam (Oral Route) Description and Brand Names*, https://www.mayoclinic.org/drugs-supplements/meloxicam-oral-route/description/drg-20066928 (last visited Sept. 9, 2021).

Mr. Thomas returned to sick call ten days later and reported that his pain was worse. Dkt. 33-20. He received another Toradol injection and an appointment with a physical therapist. *Id.* It appears that the July 19 sick call visit was Mr. Thomas's last medical treatment before leaving FCI-Terre Haute in August 2019.

**D.    FTCA Claim and Complaint**

In February 2019, during his confinement at FCI-Terre Haute, Mr. Thomas submitted a tort claim to the Bureau of Prisons (BOP) regional office. Dkt. 1-1. He described his claim as follows:

> The basis of this claim is for medical malpractice and negligence, in the failure of BOP employees to properly treat claimant's degenerative spinal disc problems, and to otherwise deny proper and effective pain management, both of which are not within the prescribed standard of care.

*Id.* at 1. Mr. Thomas summarized his symptoms and treatment and asserted that proper care for his condition required a variety of medications and an MRI or CT scan. *Id.* at 2.

After the BOP denied Mr. Thomas's administrative claim, he filed suit in this Court. Dkt. 1. Mr. Thomas's complaint outlines three claims regarding how he feels his medical treatment at FCI-

Terre Haute was below the appropriate standard of care. *Id.* at 6-8. Because each claim relates to the same care given by the same defendants over the same period, the Court treats it as one claim under the Federal Tort Claims Act (FTCA), alleging that the medical staff at FCI-Terre Haute failed to promptly diagnose or properly treat his back condition and that he suffered "pain and loss of ambulation" as a result. *Id.* at 6.

## E.    Expert Opinions

The United States supports its summary judgment motion with reports and opinions from two medical experts. Both opine that Mr. Thomas's treatment at FCI-Terre Haute satisfied the standard of care for his condition.

Roger Bailey, an anesthesiologist with a certification in pain management, characterizes Mr. Thomas's condition as "intermittent lower back pain." Dkt. 33-21 at 4. Dr. Bailey states that standard care for intermittent lower back pain includes "conservative" care consisting of non-invasive, non-operative treatment. *Id.* Moreover, Dr. Bailey interprets Dr. Rogatnick's MRI request as "being ordered as a general follow up study to compare to the baseline MRI" from 2013. *Id.* at 5. In other words, an MRI would not have been necessary to diagnose or treat Mr. Thomas's back pain in 2019. According to Dr. Bailey, Mr. Thomas was not harmed by the delay in receiving a follow-up MRI because he obtained some relief from medication. *Id.*

Andrew Zelby, a neurosurgeon, does not provide information about the standard of care for Mr. Thomas's reported symptoms because he does not believe those symptoms accurately reflect Mr. Thomas's medical condition. *See* dkt. 33-22. Rather, Dr. Zelby finds Mr. Thomas's reported symptoms "inconsistent with his objective medical findings and inconsistent with the natural history of his objective medical condition." *Id.* at 5. According to Dr. Zelby, Mr. Thomas's MRI and x-rays show "mild degeneration" and "the typical changes that would be related to the

aging of the spine." *Id.* As a result, he opines that "[t]here is no medical evidence to suggest that Mr. Thomas required more treatment for his symptoms than was provided." *Id.*

Mr. Thomas did not rebut the United States' expert opinions with expert medical evidence of his own. In his deposition, Mr. Thomas stated that he cannot run or stand for long periods because of his back, but he concedes that has been the case since he first hurt his back in 2011. Dkt. 33-1 at 27:13–28:12.

### III. The FTCA and Medical Negligence

Under the FTCA, a plaintiff may bring a civil action against the United States for damages arising from an injury "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). In other words, "the United States waives sovereign immunity under circumstances where local law would make a private person liable in tort." *United States v. Olson*, 546 U.S. 43, 44 (2005) (emphasis omitted). This provision allows "federal inmates [to] bring suit for injuries they sustain in custody as a consequence of the negligence of prison officials." *Buechel v. United States*, 746 F.3d 753, 758 (7th Cir. 2014).

An FTCA claim is governed by the law of the state where the alleged tort occurred. 28 U.S.C. § 1346(b)(1). To show negligence under Indiana law, a plaintiff must demonstrate that:

(1) the defendant owed the plaintiff a duty;

(2) the defendant breached that duty through conduct that fell below the applicable standard of care; and

(3) the defendant's breach proximately caused a compensable injury.

*Goodwin v. Yeakle's Sports Bar & Grill*, 62 N.E.3d 384, 386 (Ind. 2016).

8

Where the alleged negligence involves medical care, "expert medical testimony is usually required to determine whether a physician's conduct fell below the applicable standard of care." *Bader v. Johnson*, 732 N.E.2d 1212, 1217-18 (Ind. 2000); *see also Musser v. Gentiva Health Servs.*, 356 F.3d 751, 753 (7th Cir. 2004) ("[U]nder Indiana law a prima facie case in medical malpractice cannot be established without expert medical testimony."). "This is generally so because the technical and complicated nature of medical treatment makes it impossible for a trier of fact to apply the standard of care without the benefit of expert opinion on the ultimate question of breach of duty." *Bader*, 732 N.E.2d at 1217–18. Therefore, "Indiana's common law of medical malpractice requires a plaintiff to present expert evidence of the applicable standard of medical care unless the defendant's conduct is 'understandable without extensive technical input' or 'so obviously substandard that one need not possess medical expertise to recognize the breach.'" *Gipson v. United States*, 631 F.3d 448, 451 (7th Cir. 2011) (quoting *Narducci v. Tedrow*, 736 N.E.2d 1288, 1293 (Ind. Ct. App. 2000)). If the plaintiff fails to provide such evidence, "there is no triable issue," and the defendant is entitled to summary judgment. *Culbertson v. Mernitz*, 602 N.E.2d 98, 104 (Ind. 1992).

## IV. Analysis

Analysis of Mr. Thomas's FTCA claim begins and ends with the second element of negligence. The United States offers medical experts' opinions that the medical staff treated Mr. Thomas according to the standard of care. Mr. Thomas has not responded with expert medical evidence of his own—or with any evidence at all, for that matter. Accordingly, a reasonable jury could not determine that the medical staff breached a duty to Mr. Thomas under Indiana law.

The record makes clear that Mr. Thomas suffered from an existing back injury while he was incarcerated at FCI-Terre Haute. The medical staff did not resolve that injury. Mr. Thomas

9

obtained some relief, but it was temporary and came only with extensive medication. The record indicates that an MRI or CT scan would have been appropriate, but Mr. Thomas did not receive that imaging in the time Dr. Rogatnick requested.

Even so, a jury could not find that the medical staff breached a duty to Mr. Thomas. Indiana law required Mr. Thomas to demonstrate the breach through expert medical evidence. He did not present such evidence, and he did not attempt to demonstrate that this is a case of understandable or obviously substandard conduct that would trigger the exception to the expert testimony requirement. *See Gipson*, 631 F.3d at 451.

Although Mr. Thomas clearly suffered back pain at FCI-Terre Haute, it is not clear what brought on his symptoms or how the medical staff could have better treated his pain. The December 2018 x-rays showed that the spaces between Mr. Thomas's spinal discs were narrowing, but the narrowing was "minimal." Dkt. 33-14 at 1. Dr. Zelby, the neurosurgeon, describes the 2013 MRI as showing only "the typical changes that would be related to the aging of the spine." Dkt. 33-22 at 5. In light of this unrebutted evidence, no reasonable jury could find that Mr. Thomas's condition was easy to understand or that the treatment he received was obviously substandard, even if it did not solve his problems.

### V. Conclusion

The United States' motion for summary judgment, dkt. [33], is **granted**. This action is **dismissed with prejudice**. The **clerk is directed** to enter **final judgment** consistent with this order.

**SO ORDERED.**

Date: 9/29/2021

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

LOUGENE THOMAS
34295-044
PHELPS COUNTY JAIL
Inmate Mail/Parcels
500 W 2nd St.
Rolla, MO 65401

Jackson Taylor Kirklin
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
taylor.kirklin@usdoj.gov